**AFFIRMED in part; REVERSED in Part; SUGGEST REMITTITUR in part; and Opinion Filed June 27, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00033-CV**

**IN THE INTEREST OF D.A.C.-R. AND E.M.C.-R., CHILDREN**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-56020-2018**

# MEMORANDUM OPINION

Before Justices Schenck, Carlyle, and Garcia
Opinion by Justice Garcia

This is an appeal from a final judgment in an original suit affecting the parent–child relationship. Based on a jury's verdict, the trial judge appointed Mother as sole managing conservator of the two children involved, appointed appellant Father as possessory conservator, and awarded Mother attorney's fees. On appeal, Father raises three issues in which he argues jury-charge error, an erroneous evidentiary ruling, and errors in the fee award. We reverse the award of appellate attorney's fees, suggest a remittitur as to the award of trial-level attorney's fees, and otherwise affirm the judgment.

## I.    Background

### A.    Facts

We draw the facts from the trial evidence viewed in the light most favorable to the jury's verdict.

Mother and Father met in 2011 and started dating. Their son D.A.C.-R. was born in Cameron County in January 2013. Two weeks later, Father moved to Vermont, where he lived and worked for over a year. Father did not allow Mother and D.A.C.-R. to visit him during that time. In December 2013, Father was in the Rio Grande Valley area for two weeks, and he allowed the family to see him two or three times during that visit.

Father moved to Dallas in May 2014. He invited the family to visit him that summer, and they moved in with him in September 2014.

In February 2016, Mother and Father's daughter E.M.C.-R. was born in Plano.

In April 2018, Father obtained a new job as an immigration judge in Harlingen, Texas. He did not consult Mother before he accepted the job. Father told Mother that she could not move with him until she got a job, and she attempted to find one but was unsuccessful. The lease on their house was coming to an end around this same time, so Mother had to look for a new place to live. Father left for his new job on May 13, 2018, and he left no money or support behind for his family. Mother moved into a hotel for two days and tried to communicate with Father, but he did not respond to her emails, calls, or text messages. Father's father suggested that

Mother should take the children to Mexico, where she had family and where she generally went for a visit every summer. So she took the children to Mexico, which she had done before, and stayed there until late July.

Although Father testified that he was very concerned when he found out that Mother had taken the children to Mexico, Mother testified that she always told Father where she and the children were in Mexico and that she attempted to communicate with Father all the time. She also produced copies of text messages that appear to show she sent him numerous text messages and photos of the children in June and July. Father rarely responded to her text messages and never asked to see the children.

After Mother returned from Mexico in late July 2018, she rented a house and enrolled the children in the same day care they had been in before. Emails between Mother and Father in July and August 2018 were admitted into evidence, and they show that the parties disagreed about what was best for the children.

In September 2018, Father filed a suit in Cameron County seeking custody of the children. He obtained a writ of attachment, and constables collected the children and delivered them to Father. There were three days of hearings in the Cameron County case, and Mother had a supervised visit with the children while the case was pending. Father later dismissed the Cameron County case and filed this case in Collin County.

## B.  Procedural History

In this case, both Mother and Father filed pleadings requesting to be appointed the children's sole managing conservator. Mother also sought the immediate return of the children to her. Father testified at trial that the trial judge ordered him to return the children to Mother and that he complied.

The trial judge signed temporary orders in which she found that Father had a history or pattern of committing family violence during the suit or during the two years before the suit was filed.

Father moved to recuse the trial judge, and that motion was granted.

Mother moved to enforce the child-support provisions of the temporary orders and to hold Father in contempt. The new presiding trial judge heard the motion shortly before trial but did not sign an order until after trial.

At a pretrial discussion of the jury charge, Father asked for questions that would have allowed the jury to appoint the parents as joint managing conservators. When Mother opposed his request, Father asked to amend his pleadings, if necessary, to support joint-managing-conservatorship questions. The trial judge ruled that she would "carry [Father's request] with trial."

During the two-day trial, the trial judge admitted the temporary orders into evidence over Father's objection.

After both sides closed, the trial judge ruled that no evidence supported submitting joint-managing-conservatorship questions to the jury and that the jury

charge would submit only sole-managing-conservatorship questions. The charge asked whether there was a history or pattern of committing family violence between Father and Mother on or after May 15, 2017, and the jury answered that question, "No." The jury also found that Mother should be appointed sole managing conservator of both children and made findings regarding Mother's attorney's fees.

The trial judge later held a one-day bench trial on issues that had not been tried in the jury trial.

The trial judge then signed an order regarding Mother's motion for enforcement and an "interlocutory partial final order." Then, over a year later, the judge signed a final order that appointed Mother sole managing conservator, appointed Father possessory conservator, and awarded Mother attorney's fees as found by the jury.

Father timely appealed.

## II.    Analysis

### A.    Issue One: Did the trial judge commit jury-charge error?

Father argues that the trial judge erred by failing to submit a question, with appropriate instructions, that would have allowed the jury to appoint him and Mother joint managing conservators of the children. Mother responds that Father failed to preserve error and, alternatively, the trial judge did not err because Father's desired question and instructions were not supported by pleadings or evidence.

We assume without deciding that Father preserved error and reject his first issue on the merits, concluding that (1) Father did not argue in his opening appellate brief that he raised joint managing conservatorship in his pleadings and (2) Father has not shown that joint managing conservatorship was tried by consent.

### 1.     Applicable Law

We review a claim of jury-charge error for abuse of discretion. *Hinojosa v. LaFredo*, No. 05-18-01543-CV, 2021 WL 2217165, at \*5 (Tex. App.—Dallas June 2, 2021, pet. denied) (mem. op.).

A trial judge must submit jury questions, instructions, and definitions that are raised by the pleadings and the evidence. *See* Tex. R. Civ. P. 278; *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). Conversely, a trial judge "must not submit claims or affirmative defenses that the pleadings and evidence do not support, unless the parties tried the claim or defense by consent." *Brumley*, 616 S.W.3d at 831.

### 2.     Application of the Law to the Facts

To prevail on his first issue, Father must show either that he pleaded for joint managing conservatorship or that joint managing conservatorship was tried by consent. *See id.*

Father's opening appellate brief contains no argument that his pleadings were sufficient to support a joint-managing-conservatorship jury charge. After Mother pointed this out in her appellee's brief, Father filed a reply brief in which he argued

–6–

that he sufficiently pleaded a request for joint managing conservatorship. However, we do not consider arguments raised for the first time in a reply brief. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n.5 (Tex. App.—Dallas 2011, no pet.); *see also 2218 Bryan St., Ltd. v. City of Dallas*, 175 S.W.3d 58, 65 (Tex. App.—Dallas 2005, pet. denied) (appellant may not raise new issues in reply brief, even in response to appellee's brief). Thus, we do not consider whether Father pleaded for joint managing conservatorship, and Father's first issue fails unless joint managing conservatorship was tried by consent. *See Brumley*, 616 S.W.3d at 831.

Father's brief argues that his requested jury submission on joint managing conservatorship was supported by evidence, specifically the presumption that appointing the parents as joint managing conservators is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.131(b). We construe his brief liberally and treat this argument as broad enough to urge that joint managing conservatorship was tried by consent based on the existence of the § 153.131(b) presumption.

Unpleaded issues are treated as if they had been pleaded if they are tried by the express or implied consent of the parties. TEX. R. CIV. P. 67. An unpleaded issue may be deemed tried by implied consent if evidence about the issue is developed under circumstances showing that (1) both parties understood the issue was in the case and (2) the opposing party did not properly object. *See Garcia v. Nunez*, No. 05-17-00631-CV, 2018 WL 6065254, at *9 (Tex. App.—Dallas Nov. 20, 2018, no pet.) (mem. op.). An issue is not tried by consent merely because evidence regarding

it is admitted; the record must show not evidence of the issue but evidence of *trial of* the issue. *Bos v. Smith*, 556 S.W.3d 293, 306–07 (Tex. 2018). If the evidence is relevant to pleaded issues as well as to unpleaded issues, there is no trial by consent of the unpleaded issues because the evidence would not be calculated to elicit an objection. *Id*. at 307. The trial court has broad discretion to determine whether an unpleaded issue was tried by consent. *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 495 (Tex. App.—Dallas 2010, pet. denied). However, trial by consent is the exception rather than the rule, and it should not be inferred in doubtful cases. *Id*.

Father does not argue that any of the evidence admitted during trial was relevant solely to joint managing conservatorship. Rather, he relies entirely on the following statutory presumption:

> It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child.

FAM. § 153.131(b). Father argues that this presumption is itself evidence that supports a finding that appointing him and Mother as joint managing conservators would have been in the children's best interest. From this we infer a further argument that the existence of the presumption, by itself, established trial by consent of joint managing conservatorship.

The parties cite no authority for or against the premise that a presumption, standing alone, can establish trial by consent. We have found no such authority either. We have found one case in which a litigant made an argument much like Father's, but the court of appeals held the argument forfeited for inadequate briefing.

–8–

*See Alexander v. Alexander*, No. 13-99-652-CV, 2001 WL 1000689, at \*4 n.1 (Tex. App.—Corpus Christi–Edinburg May 17, 2001, no pet.) (not designated for publication).

Father cites two cases for the premise that a presumption is evidence. *See Gen. Motors Corp. v. Saenz ex rel. Saenz*, 873 S.W.2d 353 (Tex. 1993); *Tex. Employers' Ins. Ass'n v. Elder*, 282 S.W.2d 371 (Tex. 1955). The *Elder* case concerned the presumption in favor of the validity of a marriage, and the opinion does say that this presumption "is, in itself, evidence." 282 S.W.2d at 373. In *Saenz*, however, the court described the rules governing presumptions quite differently. *See* 873 S.W.2d at 359. According to *Saenz*, a presumption shifts the burden of producing evidence to the party against whom it operates, but once evidence contradicting the presumption has been offered the presumption "disappears and is not to be weighed or treated as evidence. . . . The evidence on the issue is then evaluated as it would be in any other case. . . . The presumption has no effect on the burden of persuasion." *Id*. (internal quotations and citations omitted); *see also Spillman v. Estate of Spillman*, 587 S.W.2d 170, 172 (Tex. App.—Dallas 1979, writ ref'd n.r.e.) ("A presumption is not evidence of something to be weighed along with the evidence.").

Several courts of appeals have held that the § 153.131(b) presumption is subject to the *Saenz* analysis—that is, "once the party seeking appointment as sole managing conservator introduces evidence to rebut the presumption, it disappears." *Turrubiartes v. Olvera*, 539 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2018,

–9–

pet. denied); *accord Lide v. Lide*, 116 S.W.3d 147, 152 (Tex. App.—El Paso 2003, no pet.); *In re Marriage of Robinson*, 16 S.W.3d 451, 454 (Tex. App.—Waco 2000, no pet.); *In re Rodriguez*, 940 S.W.2d 265, 271 (Tex. App.—San Antonio 1997, writ denied). We have said the same, albeit in an older case without precedential value. *See Mankin v. Ledezma de la Rosa*, No. 05-96-01197-CV, 1999 WL 26898, at *2 (Tex. App.—Dallas Jan. 25, 1999, no pet.) (not designated for publication) ("Once evidence contradicting the [§ 153.131(b)] presumption is offered, however, the presumption disappears and has no effect on the burden of persuasion."). We note too that the Texas Pattern Jury Charge recommends not submitting joint managing conservatorship jury instructions under the circumstances present in this case. *See* COMMITTEE ON PATTERN JURY CHARGES OF THE STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES: FAMILY & PROBATE ¶ 215.10 cmt. (2022) ("If both parents seek sole managing conservatorship and neither seeks joint managing conservatorship in the alternative, the foregoing instruction, which is based on the rebuttable presumption in Tex. Fam. Code § 153.131, is inappropriate.").[1]

We hold that the § 153.131(b) presumption, without more, does not suffice to establish implied trial by consent of the issue of joint managing conservatorship. Implied trial by consent is shown by the unobjected-to introduction of evidence

---

[1] We consider the pattern jury charge as persuasive authority only. *See Hollingsworth v. Parklane Corp.*, No. 05-19-01576-CV, 2021 WL 1290735, at *2 (Tex. App.—Dallas Apr. 7, 2021, no pet.) (mem. op.) ("Although pattern jury charges are not law, they are heavily relied upon by both bench and bar, . . . and the PJC informs our analysis here.") (internal quotations and citation omitted).

relevant solely to an unpleaded issue. *See Bos*, 556 S.W.3d at 306–07. The

§ 153.131(b) presumption is not evidence. *See Spillman*, 587 S.W.2d at 172; *see also*

*Saenz*, 873 S.W.2d at 359. Thus, the presumption did not establish trial by consent

such that the trial judge had no discretion to conclude otherwise.

### 3.     Conclusion

In sum, Father's opening appellate brief does not argue that he pleaded joint

managing conservatorship, and he has not shown that the issue was tried by consent.

Accordingly, we conclude that the trial judge did not err by refusing to submit joint-

managing-conservatorship issues to the jury. We overrule Father's first issue.

### B.     Issue Two: Did the trial judge commit reversible error by admitting the temporary orders into evidence?

Father argues that the trial judge committed reversible error by admitting into

evidence a copy of the temporary orders in this case. Mother responds that any error

was harmless. As discussed below, we agree with Mother.

### 1.     Applicable Law

We review a trial judge's evidentiary ruling for abuse of discretion. *Fleming*

*v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam). We uphold the ruling if there

is any legitimate basis for it. *In re A.R.M.*, 593 S.W.3d 358, 373 (Tex. App.—Dallas

2018, pet. denied).

Even if the trial judge abused her discretion by admitting evidence

erroneously, we reverse only if the error probably caused the rendition of an

improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). This usually requires the

complaining party to show that the judgment turns on the evidence erroneously admitted. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995). In determining whether the complaining party has shown harm, we may consider factors such as whether (1) the erroneously admitted evidence was crucial to a key issue, (2) the erroneously admitted evidence was cumulative, (3) the other evidence was so one-sided that the erroneously admitted evidence likely made no difference, (4) counsel emphasized the erroneously admitted evidence, (5) there was contrary evidence that the erroneously admitted evidence was calculated to overcome, (6) the evidence's proponent insisted on admitting it, and (7) the jury found damages in excess of the evidence. *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871–74 (Tex. 2008); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

### 2.    Application of the Law to the Facts

We conclude that Father has not shown that any error in admitting the temporary orders was harmful—that is, that the jury's verdict turned on the temporary orders.

Father argues that admitting the temporary orders was harmful because it contained three findings by the former presiding trial judge: (1) Father had a history or pattern of committing family violence; (2) appointing Mother as temporary sole managing conservator furthered the safety, welfare, and best interest of the children; and (3) awarding Mother interim attorney's fees was necessary for Mother to prepare

–12–

for trial and to protect the safety, welfare, and best interest of the children. Father urges that the following facts show the influence of the temporary orders:

- When the document was admitted, Mother specifically directed the jury's attention to the family-violence finding and the award of attorney's fees.

- Although the jury did not find that Father had committed family violence, it did find that Mother should be appointed sole managing conservator, just as the temporary orders did.

- The jury awarded Mother attorney's fees, just as the temporary orders did.

- The trial judge did not redact the findings from the temporary orders, and she denied Father's request to tell the jury that the previous trial judge had been recused and the reasons for that recusal.

We are not persuaded that the jury's verdict turned on the findings in the temporary orders. The most important fact in our analysis is that the jury answered "No" to question 1:

Do you find from a preponderance of the evidence that there was a history or pattern of committing family violence between [Father] and [Mother] at any time during the period of May 15, 2017 and the present?

Thus, even though Mother testified that Father struck and injured her in April 2018, and even though the temporary orders contained a specific family-violence finding against Father, the jury refused to find that Father had a history or pattern of committing family violence. This suggests that the temporary orders had little if any impact on the jury's verdict. We also note that Mother's attorney did not mention the temporary orders during her closing argument.

–13–

The other factors that Father asks us to consider do not persuade us that the jury's verdict turned on the temporary orders. Aside from the family-violence finding, which the jury apparently discounted, the temporary orders contain no specific reasons for the appointment of Mother as temporary sole managing conservator. The jury heard ample evidence to support its sole-managing-conservatorship finding, such as Mother's testimony supporting the following facts:

- When Father moved from the Dallas area to the Rio Grande Valley in May 2018, he left no money or support for Mother and the children.

- While Mother was in Mexico during summer 2018, Father rarely responded to text messages and never asked to see the children.

- During the pendency of the case, Father neither exercised any of his possession of the children allowed by the court nor paid any of the child support he was ordered to pay. Although Father had been to court at least five times from October 2018 to the trial in May 2019, he never asked to see the children.

- Father was verbally abusive towards Mother.

- Father drinks every night and gets very aggressive and violent when he drinks.

- Father left loaded firearms unsupervised and regularly slept with a loaded gun on his nightstand.

Mother also produced testimony from a friend who had children in the same school as D.A.C.-R. The friend testified that Mother loved and cared for D.A.C.-R. and E.M.C.-R. and that she had never known Mother to have a temper. She had never observed the children to have bad hygiene, and Mother was very loving and attentive with them. She also testified that she had allowed Mother to keep her own children.

–14–

Although Father testified that Mother had a bad temper and produced corroborating testimony from his parents, he contradicted little if any of Mother's evidence about his conduct and behavior discussed above. In light of the record as a whole, we cannot conclude that the jury's sole-managing-conservatorship finding turned on the temporary orders.

The jury's findings about Mother's attorney's fees do not show that the jury was influenced by the temporary orders. The jury was not asked *whether* to award Mother her attorney's fees; it was asked only to find the reasonable and necessary amounts of those fees. And the amounts that the jury found did not exceed the evidence.

As for Father's final points, his complaint that the trial judge did not redact the findings from the temporary orders merely reiterates his complaint that the temporary orders were admitted erroneously. And he cites no authority for the premise that he should have been allowed to introduce evidence about the first trial judge's recusal, so we do not consider it. *See* TEX. R. APP. P. 38.1(i).

### 3. Conclusion

Any error in admitting the temporary orders was harmless, so we overrule Father's second issue.

## C. Issue Three: Did the trial court err in making the award of attorney's fees and costs?

In his third issue, Father raises several different arguments challenging the award of attorney's fees and costs to Mother. We address each in turn

### 1. Applicable Law and Error Preservation

This is a suit under Title 5 of the Family Code, so the trial judge was authorized to award costs and reasonable attorney's fees and expenses. *See* FAM. § 106.001; *id.* § 106.002(a).

The trial judge awarded Mother attorney's fees in the amounts found by the jury. Father asserts that the jury's verdict on fees was only advisory, citing *In re Rodriguez*, No. 13-16-00411-CV, 2017 WL 395257, at *8 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2017, orig. proceeding) (mem. op.). Although *Rodriguez* supports Father's assertion, we decline to follow that precedent. Family Code § 105.002 adopts a general rule that a party may demand a jury trial unless the suit is one in which adoption is sought or is a suit to adjudicate parentage under Chapter 160. FAM. § 105.002(a), (b). If a jury trial is held, there are certain issues on which the trial judge may not contravene the jury's verdict, *id.* § 105.002(c)(1), and certain other issues on which the trial judge may not submit jury questions, *id.* § 105.002(c)(2). Section 105.002 does not single out attorney's fees for any special treatment, so we conclude that jury findings on attorney's fees in a SAPCR should be given the same effect as jury findings on attorney's fees in any other civil case.[2]

---

[2] Section 105.002 once included a subsection (d) that expressly made certain jury findings advisory only. *See* Act of May 8, 1997, 75th Leg., R.S., ch. 180, § 1, 1997 Tex. Gen. Laws 1033, 1034. That subsection was repealed in 2003. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 22, 2003 Tex. Gen. Laws 2987, 2994.

This brings us to error preservation. Father asserts that the awards of attorney's fees and costs are supported by legally and factually insufficient evidence. He preserved his factual-insufficiency challenges by asserting them in his motion for new trial and his supplemental motion for new trial. *See* TEX. R. CIV. P. 324(b). But he did not preserve a legal-insufficiency challenge in his new-trial filings or otherwise. *See Pearcy v. Brewer*, No. 05-16-00194-CV, 2016 WL 7473907, at *2 (Tex. App.—Dallas Dec. 29, 2016, pet. denied) (mem. op.) (listing ways to preserve legal-sufficiency challenges). Thus, we limit our review to factual sufficiency.

The standard of review for a factual-sufficiency challenge is well settled. Because Father did not bear the burden of proof on the issues of fees and costs, our inquiry is whether there is insufficient evidence to support the jury's findings. *See Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.). We consider all the evidence in the record and set the verdict aside only if the evidence supporting the jury finding is so weak or the finding is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id*. The jury is the sole judge of witness credibility and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The leading case on proving recoverable attorney's fees is *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). Under *Rohrmoos*, any party seeking to recover its fees from an opponent must prove that the requested fees are both reasonable and necessary. *Id*. at 488–89. If an objective calculation of

reasonable hours worked times a reasonable hourly rate can be employed, the claimant must provide sufficient evidence of the reasonable hours the attorney worked and a reasonable hourly rate. *Id*. at 497–98. Sufficient evidence includes, at a minimum, evidence of (1) the particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing the services. *Id*. at 498. Generally, conclusory testimony devoid of any real substance will not support a fee award. *Id*. at 501. Contemporaneous billing records are not required but are strongly encouraged. *Id*. at 502.

Contingent appellate attorney's fees that have not yet been incurred must be projected based on expert testimony. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). The lack of certainty does not excuse a party seeking to recover contingent appellate fees from the burden to provide opinion testimony about the services she reasonably believes will be necessary to handle the appeal and a reasonable hourly rate for those services. *Id*.

### 2. Application of the Law to the Facts

The jury made six distinct findings regarding Mother's reasonable and necessary attorney's fees. First, the jury found that her fees were $85,381.25 "For Representation in the trial court." Then the jury made five separate findings as to Mother's fees for each stage of an appeal, assuming the case proceeded all the way

to a judgment by the Texas Supreme Court. The trial court's judgment awarded Mother her fees based on the jury's findings.

Father raises several arguments, and we address each in turn.

### a. Mathematical Error

Father first argues that the finding of $85,381.25 as trial-level attorney's fees is too high because it is based on a mathematical error.

Mother's evidence of attorney's fees consisted of testimony by her attorney and an exhibit that includes the same attorney's affidavit and redacted billing records. The affidavit contains a chart that shows (1) each legal professional who worked on the matter, (2) the time each professional spent on the matter before trial, (3) each professional's hourly rate, and (4) each professional's total "Amount" (time × rate). The chart then presents the sum of all of the "Amounts" as $83,789.50, as shown below:

| Attorney/Paralegal | Hours | Rate | Amount |
|---|---|---|---|
| Jodi L. Bendern(Partner) | 148.20 | $325.00 | $48,165.00 |
| Lisa Duffee (Partner) | 29.40 | $500.00 | $14,700.00 |
| Marilea W. Lewis (Partner) | .25 | $550.00 | $137.00 |
| Marianne Howland (Partner) | 1.50 | $175.00 | $262.50 |
| Larisa Martirosova (Associate) | 12.50 | $225.00 | $495.00 |
| Zak Martinez (Associate) | 21.20 | $225.00 | $4,770.00 |
| Amber Lane (Paralegal) | 7.70 | $175.00 | $1,347.50 |
| Lindy McMahan (Paralegal) | 8.00 | $175.00 | $1,400.00 |
| Melissa Stapleton (Paralegal) | 18.01 | $200.00 | $3,602.00 |
| Victoria Buckley (Paralegal) | 32.10 | $200.00 | $6,420.00 |
| Jodi Bender (at Paralegal rate) | 1.50 | $175.00 | $262.50 |
| Jordan Williams (Law Clerk) | 1.50 | $150.00 | $225.00 |
| **Total for Professional Services Rendered**<br><br>$15,902.00 prior to Collin County case<br>$67.887.50 for Collin County case | **$83,789.50** | | |

After this, the chart goes on to add costs of $1,856.75, add estimated trial fees of $17,950.00, and subtract discounts and credits of $18,215.00, for a total of $85,381.25 for trial-level attorney's fees.

Father argues that the "Total for Professional Services Rendered" that appears in the chart above is $2,003.00 too high because the figures in the "Amount" column add up to only $81,786.50. Father's point about that mathematical error is correct, but we reject his argument overall because two other mathematical errors in the chart more than compensate for the $2,003.00 discrepancy. Specifically, the amount shown for Larisa Martirosova is $2,317.50 too low based on the hours and rates

given, and the amount shown for Marilea Lewis is $.50 too low. Because these errors more than offset the $2,003.00 discrepancy pointed out by Father, we reject his first argument under issue three.

### b.     Excessive Redactions

Father's second argument is that Mother's evidence of her pre-trial attorney's fees is insufficient because the billing records she offered into evidence are too heavily redacted to support findings of reasonableness and necessity.

Mother's evidence of attorney's fees consisted of trial testimony by her lead attorney, an affidavit by the same attorney, and a set of redacted invoices covering services rendered through May 9, 2019, which was just a few days before trial began. The affidavit recites a litany of general tasks that Mother's legal team performed pre-trial, such preparing Mother's answer and counterpetition, preparing for and attending certain hearings, preparing and responding to discovery, and preparing for trial. In her live testimony, Mother's lead attorney similarly described some of the matters that required legal services, but she did not detail how much time was spent on any particular services. The attorney testified that the fees and expenses outlined in her affidavit were reasonable and necessary.

The fee invoices are heavily redacted, presumably to protect attorney–client privilege and attorney work product. *See KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *22 (Tex. App.—Dallas Oct. 9, 2020, pet denied) (mem. op.) ("[A]ttorney invoices are routinely redacted when offered into

–21–

evidence to protect attorney–client and work-product privileges."). In this case, the billing entries typically identify the date of the services, the legal professional who performed the services, the amount of time spent performing the services, and the amount charged. The entries usually describe the tasks performed with general terms such as "prepare," "review," "draft," "call," "email," and the like, and the specifics about the task are almost always redacted. The following sample is representative:

| | | | Hours | Amount |
|---|---|---|---|---|
| 01/16/19 MS | Revise ███████. | | 0.50 | $100.00 |
| JB | Emails with ███ regarding ██████ (.20). | | 0.20 | $65.00 |
| 01/17/19 VB | Work on ████████ | | 0.50 | $100.00 |
| LGD | Review ██████ | | 0.25 | $125.00 |
| MS | Revise ████████; conference with Ms. Duffee regarding same. | | 0.50 | $100.00 |
| JB | Prepare for hearing on ████████ and ████ for ████████; Review ████████ filed by ████████ (1.25). | | 1.25 | $406.25 |
| 01/18/19 LGD | Conference with Ms. Bender regarding ██████ | | 0.25 | $125.00 |
| VB | Work on processing documents from Opposing Party and ████████ | | 0.40 | $80.00 |
| JB | Travel to and attend hearing on motion to enter and motion jury questionnaire, conference with client and Ms. Duffee following hearing; Receipt and review of ██ from ████ regarding ████████ | | 3.60 | $1,170.00 |

Father points out that some entries are so heavily redacted as to be virtually meaningless, such as the following entry from December 10, 2018:

| | | | | |
|---|---|---|---|---|
| LM | Prepare ████████. Prepare ██████ Prepare ████████. (2.5) | | 2.50 | $437.50 |

However, on the whole, the billing entries and redactions are similar to those we described in *KBIDC Investments*. *See id*. ("The redacted material mostly consisted of the topic of the attorney's conversations with the client or with co-counsel or the topic of certain research."); *see also In re S.C.*, No. 05-18-00629-CV, 2020 WL 3046203, at *6 (Tex. App.—Dallas June 8, 2020, pet. denied) (mem. op.) (redacted bills still provided the "critical information" about the services performed). Like the appellant in *KBIDC Investments*, Father does not argue that any of the redacted material was not privileged. *See KBIDC Invs.*, 2020 WL 5988014, at *22. And as in *KBIDC Investments*, Mother provided substantial information about her legal services and fees, and her lead counsel testified and was cross-examined. *See id*. at *23. Mother's fee evidence also compares favorably to the evidence we held sufficient in *MRI Pioneer & Colorado Investment Fund, LP v. Pyatt*, No. 05-18-01399-CV, 2020 WL 4013147, at *9 (Tex. App.—Dallas July 16, 2020, pet. denied) (mem. op.) (upholding fee award even though claimant did not introduce billing records; counsel described the tasks performed and specified the number of hours billed in three categories: pretrial, trial preparation, and trial). Mother's fee invoices are not as heavily redacted as the ones we held insufficient in *THB Construction, LLC v. Holt Texas, Ltd.*, No. 05-20-00020-CV, 2022 WL 123105, at *3 (Tex. App.—Dallas Jan. 13, 2022) (mem. op.), *judgm't vacated but op. not vacated*, 2022 WL 336559 (Tex. App.—Dallas Feb. 4, 2022, no pet.) (mem. op.).

In his reply brief, Father cites cases in which other courts of appeals have held that redactions similar to those in this case were so excessive as to deprive the billing records of probative value. *See Person v. MC-Simpsonville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332, at *8–9 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.); *McGibney v. Rauhauser*, 549 S.W.3d 816, 821–23 (Tex. App.—Fort Worth 2018, pet. denied). However, we are obliged to follow our own precedents, *see Chakrabarty v. Ganguly*, 573 S.W.3d 413, 415 (Tex. App.—Dallas 2019, no pet.) (en banc), and we conclude that our decisions in *KBIDC Investments*, *In re S.C.*, and *MRI Pioneer* are controlling.

We conclude that Father has not shown that the evidence is factually insufficient to support the jury's finding on Mother's reasonable and necessary pre-trial attorney's fees.

### c. Evidence of Estimated Fees for Trial and Appeal

Next, Father argues that Mother's evidence is insufficient to support the $85,381.25 award of trial-level fees because that sum includes an unsupported sum of $17,950.00 for "[e]stimated time for trial preparation and attendance for attorneys, paralegals, and support staff from May 10, 2019 – trial." In the same argument, he challenges the evidentiary support for the jury's five awards of conditional appellate attorney's fees, which total $40,000.00 for appeals through the Texas Supreme Court.

We agree with Father as to the appellate attorney's fees. A party seeking to recover contingent appellate attorney's fees must provide expert testimony about the services she reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell*, 620 S.W.3d at 355; *see also KBIDC Invs.*, 2020 WL 5988014, at *23–24 (applying *Yowell* and reversing award of appellate fees based on conclusory testimony about the reasonable and necessary fees for each stage of the appellate process). Mother introduced no evidence about the services that would be necessary to defend any appeals, nor did she introduce any evidence about a reasonable hourly rate for those services. Instead, her attorney's affidavit simply states that specified estimated amounts for handling each phase of an appeal are reasonable and necessary. Thus, the evidence is insufficient to support the award of appellate attorney's fees to Mother.

We also agree with Father that the evidence is insufficient to support the "trial preparation and attendance" component of Mother's trial-level attorney's fees. Mother introduced no evidence about which professionals she expected to prepare for and attend trial, what their reasonable hourly rates were, what tasks they would perform, or how many hours each professional was likely to spend performing those tasks. Instead, her attorney's affidavit simply recites an opinion estimating that $17,950.00 would be required for "attorneys, paralegals, and support staff" to prepare for and attend trial. Consistent with *Yowell*, we conclude that Mother was required to introduce more detailed expert opinion evidence about the services

necessary to handle the trial and the reasonable hourly rates for those services. *See Yowell*, 620 S.W.3d at 355. Because the jury's finding of $85,381.25 in attorney's fees for the entirety of Mother's trial-court representation depends in part on the $17,950.00 Mother requested for trial preparation and attendance, we conclude that the jury's finding is supported by insufficient evidence.

### d. Fees for Services Rendered Pre-Suit

In his next argument, Father argues that the award of trial-level attorney's fees is excessive because Mother's evidence shows that about $16,000 of that sum constitutes fees for services rendered in connection with the previous SAPCR that Father filed in Cameron County and dismissed before filing this suit in Collin County. He points specifically to Mother's lead attorney's affidavit, which contains a chart itemizing Mother's legal expenses. That chart includes this line:

| | |
|---|---|
| Total for Professional Services Rendered<br><br>$15,902.00 prior to Collin County case<br>$67.887.50 for Collin County case | $83,789.50 |

Father contends that the $15,902.00 incurred "prior to Collin County case" refers to work done on the Cameron County case and that those fees cannot be recovered because there is no basis for concluding that those fees were "reasonable and necessary for this lawsuit."

We conclude that Father has not adequately briefed this argument. An appellant must support his argument with appropriate citations to legal authorities.

*See* TEX. R. APP. P. 38.1(i). The only authority Father cites to support his argument is *Rohrmoos Venture*, which does not address the argument he makes—that the Family Code provision authorizing an award of attorney's fees in a SAPCR does not permit an award of fees incurred in a different, previous SAPCR between the same parties. Father does not cite or otherwise refer to the relevant Family Code provision, nor does he provide a logical argument showing that his assertion is correct. Thus, he does not demonstrate that the Family Code does not allow the recovery of fees incurred before this suit commenced. *Cf. Am. Heritage Capital, LP v. Gonzales*, 436 S.W.3d 865, 879–80 (Tex. App.—Dallas 2014, no pet.) (a defendant's fees incurred before being joined in a case are potentially recoverable under the Texas Citizens Participation Act), *disapproved in part on other grounds by Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017).

Because this argument is inadequately briefed, we do not address it. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) (discussing components of an adequate appellate argument).

### e. Costs

Father's next argument challenges the costs component of the award of trial-level attorney's fees. Again, the jury found that Mother's reasonable and necessary attorney's fees for representation in the trial court were $85,381.25. Based on the chart in the affidavit by Mother's lead attorney, $1,856.75 of that award consisted of costs. Father raises two complaints about the costs evidence: (1) the billing

–27–

invoices' entries for expenses were almost completely redacted and (2) the chart states that about half of the costs were incurred "prior to Collin County case."

Like Father's previous argument, this argument is inadequately briefed. Father cites no legal authorities in support of his argument—not even the statute authorizing the award of costs in a SAPCR. Accordingly, we do not address this argument. *See* TEX. R. APP. P. 38.1(i); *Bolling*, 315 S.W.3d at 896.

### f. Other Fee-Related Errors

In Father's last argument under issue three, he argues that the trial judge erred in two respects: (1) the judge signed an enforcement order that illegally awarded Mother interim attorney's fees as child support and (2) the fees awarded in the enforcement order are duplicative of the fees awarded in the final judgment.

The following timeline puts Father's arguments in context:

| October 2018 | Father filed this SAPCR, and Mother filed a counter-petition. |
| January 2019 | The trial judge signed temporary orders that ordered Father to pay $14,500.00 for Mother's attorney's fees "as additional child support," plus $5,000.00 per month going forward as interim attorney's fees and expenses "as additional child support." |
| April 2019 | Father filed a motion to vacate the temporary orders.<br><br>Mother filed a first amended motion for enforcement of the temporary orders and requested the remedy of contempt. |
| May 7, 2019 | The trial judge heard Mother's motion for enforcement and orally found Father in contempt. |
| May 13–14, 2019 | Jury trial. |
| July 2019 | Father filed a motion for new trial. |
| August 29, 2019 | Bench trial on remaining issues in the SAPCR. |

| | |
|---|---|
| | The trial judge also signed an order regarding Mother's motion for enforcement and request for contempt. The order found Father in contempt and placed him on community supervision for one year, conditioned on, among other things, Father's paying the $14,500.00 in interim attorney's fees "as additional child support" at the rate of $1,000.00 per month.<br><br>Finally, the trial judge also signed an "Interlocutory Partial Final Order in Suit Affecting the Parent–Child Relationship." This order awarded the trial-level and contingent appellate attorney's fees found by the jury and contained no language categorizing those fees as child support. |
| October 30, 2020 | The trial judge signed the final judgment. The judgment awarded the trial-level and contingent appellate attorney's fees found by the jury and contained no language categorizing those fees as child support. |
| November 30, 2020 | Father filed a supplemental motion for new trial. |

Now we turn to Father's arguments. First, he argues that if the enforcement order is still in effect after the signing of the final judgment, the enforcement order is illegal to the extent it categorizes the attorney's fees assessed against Father as additional child support.[3] However, this error must be preserved in the trial court. *See In re A.B.P.*, 291 S.W.3d 91, 99–100 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. APP. P. 33.1(a). Father does not explain how he raised this error in the trial court, and we see no such objection in the record. Although Father's new-trial

---

[3] Mother argues that we lack jurisdiction to consider this argument because contempt orders must be challenged by original proceeding. *See In re S.C.*, No. 05-19-01343-CV, 2021 WL 3671197, at *2 (Tex. App.—Dallas Aug. 18, 2021, orig. proceeding) (mem. op.). We agree with Father that this rule is inapplicable because Father's argument challenges the characterization of the attorney's fees award, not any contempt findings.

motions complained about the sufficiency of evidence to support the jury findings of Mother's attorney's fees, Father's complaint about the enforcement order's categorization of its fee award does not challenge the sufficiency of the evidence supporting the jury's findings and thus was not preserved by his new-trial motions. We conclude that this point has not been preserved for appeal.[4]

Father's other argument is that the trial judge improperly awarded duplicative attorney's fees by ordering Father to pay $14,500.00 in fees in the August 29, 2019 enforcement order and then including that same sum again in the trial-level-fees component of the final judgment. He contends that the duplicative nature of the final-judgment award is shown by the fact that the fee affidavit and billing records Mother introduced into evidence purport to prove up all of Mother's attorney's fees in the matter up to May 10, 2019.

Father raised this argument in the trial court during the August 29, 2019 bench trial, and Mother's counsel represented to the trial judge that "the jury was not asked to consider the $14,500 that was previously awarded by this Court as part of the enforcement action." Father disagreed, apparently based on the chart in the fee

---

[4] We note, however, that Father appears to be correct. We see no legal justification for characterizing Mother's interim attorney's fees of $14,500 as additional child support. *See generally Tucker v. Thomas*, 419 S.W.3d 292, 296–97 (Tex. 2013) (discussing when a trial court is permitted to characterize an award of attorney's fees to a party as additional child support). Thus, it appears that the trial court is prohibited from enforcing the award under its contempt powers. *See id*. We make these observations for the guidance of the parties and the trial court in any future proceedings. *See Tracy v. Tracy*, 219 S.W.3d 527, 530–31 (Tex. App.—Dallas 2007, no pet.) (making similar observations under similar circumstances).

affidavit, but the trial judge then said, "I find that it was not included in the jury request and that it was separate."

We conclude that Father has not shown that the fee awards are duplicative because the record shows a deduction from Mother's trial-level attorney's fees in the amount of $18,215.00 with the description "[l]ess discounts/credits/***amounts previous [sic] ordered to be paid through enforcement proceeding***." (Emphasis added). This evidence shows that the interim fees were deducted from the amount requested by Mother. The amount deducted exceeds the fees previously awarded as part of the enforcement action.

### 3. Conclusion

There is insufficient evidence to support the jury's finding that $85,381.25 was a reasonable fee for the necessary services of Mother's attorneys for representation in the trial court, but there is sufficient evidence to support a lesser award of $67,431.25. Under these circumstances, we suggest a remittitur in the amount of $17,950.00. *See* TEX. R. APP. P. 46.3; *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 838–39 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

There is also insufficient evidence to support the jury's findings of Mother's appellate attorney's fees. We reverse the judgment to the extent it awards those fees and remand for further proceedings as to that issue. *See Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *11 (Tex. App.—Dallas Feb. 11, 2022, no pet. h.)

(mem. op.) (reversing and remanding under similar circumstances). We overrule Father's third issue to the extent it seeks any other relief.

### III. Disposition

Having concluded that the trial court's award of $85,381.25 for reasonable attorney's fees, expenses, and costs incurred by Mother is excessive by $17,950.00, we suggest a remittitur of that amount. If within fifteen days of the date of this opinion, Mother files in this Court a remittitur of $17,950.00 of attorney's fees, we will reform the trial court's Final Order in Suit Affecting the Parent–Child Relationship accordingly and affirm that part of the judgment as reformed. If Mother does not timely file such a remittitur, we will reverse the Final Order's award of attorney's fees incurred for representation in the trial court and remand for a new trial of that issue.

Additionally, we reverse the Final Order's awards of Mother's attorney's fees on appeal and remand to the trial court for further proceedings on Mother's attorney's fees for services in the court of appeals and the supreme court.

In all other respects, we affirm the Final Order.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210033F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF D.A.C.-R. AND E.M.C.-R., CHILDREN

No. 05-21-00033-CV

On Appeal from the 417th Judicial District Court, Collin County, Texas Trial Court Cause No. 417-56020-2018.
Opinion delivered by Justice Garcia. Justices Schenck and Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's Final Order in Suit Affecting the Parent–Child Relationship is **AFFIRMED** in part and **REVERSED** in part, and we **SUGGEST REMITTITUR** in part.

We **REVERSE** the trial court's Final Order in Suit Affecting the Parent–Child Relationship to the extent it awards appellee Monica Rios any attorney's fees on appeal, and we **REMAND** the case for further proceedings on appellee Monica Rios's claim for attorney's fees on appeal.

We **SUGGEST A REMITTITUR** as to that portion of the trial court's Final Order in Suit Affecting the Parent–Child Relationship awarding appellee Monica Rios her incurred attorney's fees of $85,381.25. If within fifteen days of the date of this Court's opinion, appellee Monica Rios files in this Court a remittitur with respect to those attorney's fees in the amount of $17,950.00, we will **MODIFY** the trial court's Final Order in Suit Affecting the Parent–Child Relationship accordingly and **AFFIRM AS MODIFIED** that portion of the trial court's Final Order in Suit Affecting the Parent–Child Relationship. If appellee Monica Rios does not timely file such a remittitur, we will **REVERSE** the Final Order in Suit Affecting the Parent–Child Relationship with respect to Monica Rios's incurred attorney's fees and **REMAND** the case for further proceedings on appellee Monica Rios's claim for incurred fees.

–33–

We **AFFIRM** the trial court's Final Order in Suit Affecting the Parent–Child Relationship in all other respects.

We order each party to bear his or her own costs of this appeal.

Judgment entered June 27, 2022.